Furnari, J.
This is an action for the defendants’ alleged breach of contract and G.L.c. 93A unfair and deceptive practices stemming from the refusal of the defendants to return the plaintiffs’ purchase deposit upon the failure of the parties’ purchase and sale *154 transaction.
The case is before this Division upon an appeal by both parties in which the plaintiffs claim to be aggrieved by the court’s denial of their motion to amend judgment, and in which the defendants charge error in the court’s denial of their motion for the amendment of judgment or for a new trial.
The reported evidence indicates that in January, 1989, the parties executed a written agreement for the plaintiffs’ purchase of a house to be constructed by the defendants on land the defendants owned in Byfield, Massachusetts. The parties’ contract was a standard form purchase and sale agreement with two typewritten addenda. The agreement provided, inter alia, that time was of the essence, designated a closing date of June 1,1989 and set forth mechanisms for either party’s extension of the time for performance. The addenda contained various building specifications and outlined the parties’ respective liabilities for interest charges on the defendant-sellers’ construction loan.
The plaintiffs paid the $18,500.00 deposit at issue on a total purchase price of $363,000.00. The parties’ agreement contained the standard clauses that said deposit was to be retained as liquidated damages by the sellers upon the plaintiff-buyers’ breach unless the sellers issued written notification to the contrary within thirty days of the closing or any extension thereof; or was to be refunded by the sellers in the event that the sellers were unable to convey title or deliver possession of the premises, or if the premises did not conform with contract requirements on the closing date.
To finance their purchase of the defendants’ property, the plaintiffs secured a mortgage commitment from the B.F. Saul Mortgage Company which was contingent upon a sale of their home in Sherborn, Massachusetts and a showing of $75,000.00 in net proceeds from such sale.
As of June 1,1989, the plaintiffs had no prospects for the sale of their Sherborn home, and the defendants had neither completed certain work on the Byfield property, which included electrical and plumbing work on the house, nor obtained an occupancy permit. No closing took place.
Although the defendant-sellers contend that they requested a thirty day extension and that they could have completed construction of the house within three weeks of notification that the purchasers had a buyer for their Sherborn home, it is clear that the defendants recognized and ultimately relied upon the June 1,1989 date as the time fixed for performance. Defendants’ counsel forwarded a letter to the plaintiffs on June 7,1989 which stated in pertinent part:
I am informed by the True Company that you were unable to and refused to perform on June 1,1989 and further refused to execute an extension of the Agreement as offered by the seller. Accordingly, please consider this letter notice that due to your default and non-performance, the True Company, as seller, shall retain the deposit tendered by you as liquidated damages as provided for in paragraph 21 of the Purchase and Sales Agreement.
The plaintiffs responded on June 26,1989 with a G.L.c. 93A demand letter which included a request for the return of their deposit money. The defendants responded with an offer to sell the Byfield house lot to the plaintiffs.
On October 5,1989, the defendants sold the property to a third party for $270,000.00.
This action was commenced on November 8, 1989. The defendants’ answer included affirmative defenses that they were entitled to retain the plaintiffs’ deposit as liquidated damages and that the amount of the deposit was reasonable in light of the damages incurred by them in consequence of the plaintiffs’ alleged breach. The defendants’ answer did not include a counterclaim.
At the close of the two day trial of this action, both parties filed requests for findings of fact as well as requests for rulings of law. The court also permitted both parties to *155 file supplementary requests. The trial judge not only responded to both parties’ requests for legal rulings, but also elected to act upon all of the twenty-one (21) requests for findings of fact filed by the plaintiffs and the forty-four (44) requests for findings of fact filed by the defendants. See, as to requests for findings of fact in district court actions, Dist./Mun. Cts. R. Civ. P., Rule 52(a); Ashapa v. Reed, 280 Mass. 514, 516 (1932); Patten’s Plumbing & Heating Co. v. Bifano, 1984 Mass. App. Div. 228.
Judgment was entered for the plaintiffs in the amount of $10,000.00.
Both parties thereafter filed Dist./Mun. Cts. R Civ. P., Rule 59 motions, on the grounds that the courf s ultimate judgment was inconsistent with its findings of fact and conclusions of law made in response to the parties’ requests. Both motions were denied after hearing.
The plaintiffs now contend that the court’s failure to award damages in the full amount of their deposit, plus interest from the date of their G.L.c. 93A demand, was inconsistent with the court’s findings that time was of the essence under the contract; that the defendants had not completed their contract performance and were unable to convey title on June 1, 1989; and that the plaintiffs did not breach the parties’ purchase and sale agreement.
Conversely, the defendants now argue on this appeal that the court’s entry of judgment for the plaintiffs in any amount was inconsistent with the court’s findings that the plaintiffs had not sold their Sherborn home by June 1, 1989 to finance their purchase of the defendants’ property; that the defendants could have completed the remaining work, which consisted solely of items specifically requested by the plaintiffs, within three weeks of any notice by the plaintiffs; that the sellers paid $10,200.00 in interest on their construction loan for which the plaintiffs were responsible under AddendumB;[3]and that the defendants did notbreach the parties’ purchase and sale agreement.
1. The issue of alleged inconsistencies in the court’s judgment, rulings and findings was properly raised in the trial court and preserved for appellate review by the parties’ motions to amend judgment and for a new trial. Cook v. Kozlowski, 351 Mass. 708 (1967); Viera v. Balsams, 328 Mass. 37, 39 (1951). Such Rule 59 motions are designed primarily to “correct judgments which are erroneous because they lack legal or factual justification,” Pentucket Manor Chronic Hosp. Inc. v. Rate Setting Commission, 394 Mass. 233, 237 (1985), and are addressed to the trial judge’s discretion. Galvin v. Welsh Mfg. Co., 382 Mass. 340, 343 (1981); Lynn v. Nashawaty, 12 Mass. App. Ct. 310, 316 (1981).
2. We find no inconsistency amounting to reversible error in the court’s subsidiary findings and rulings and its ultimate judgment that the defendants were obligated to return the plaintiffs’ deposit. The dispositive findings of fact made by the trial court herein were that neither the plaintiffs nor the defendants were in breach of their mutual promises under the parties’ purchase and sale agreement. Contrary to both *156 parties’ contentions, such findings[4] were not “clearly erroneous,” Gallagher v. Taylor, 26 Mass. App. Ct. 876, 880 (1989), so as to warrant “the definite and firm conviction that a mistake had been committed,” New England Canteen Serv., Inc. v. Ashley, 372 Mass. 671, 675 (1977), but were instead amply supported by the reported evidence. Such evidence showed that as of the June 1, 1989 closing date, neither party appeared ready, willing and able to complete the transaction. The plaintiff-purchasers had not sold their Sherborn property in satisfaction of the condition precedent to obtaining mortgage company financing. The defendant-sellers had not completed construction of the house or obtained the necessary use and occupancy permit which were prerequisites to theirconveyanceof title. Clearly, neitherparty tendered performance on the scheduled date, and thus neither party was in a position to claim a breach by the other side. Where the parties’ performance is concurrent, one party cannot put the other in default unless that party is ready, willing and able to perform and had manifested some offer or performance. Vander Realty Co. v. Gabriel, 334 Mass. 267, 271 (1956).
There is no merit to the defendants’ arguments that their tender of performance was excused by the plaintiffs’ alleged repudiation of the contract prior to June 1, 1989, see Leigh v. Rule, 331 Mass. 664, 668 (1954), or that the plaintiffs breached the contract by refusing to agree to the defendants’ requestto extend the June 1, 1989 closing date. Plaintiff Charles Henninger’s statement in May, 1989 that there were then no prospects for the sale of his Sherborn home did not exclude the possibility either that a buyer would be found or that the plaintiffs had or would secure other financing for their purchase. Second, the consent of the plaintiffs was not required for the sellers’ extension of the time for performance. The agreement accorded the defendants an automatic right to a thirty day extension upon notice to the plaintiffs, and the defendants could have completed construction and tendered performance on July 1, 1989. They did not do so, nor did they by any other means test the plaintiffs’ position, or put themselves in a posture to demand the plaintiffs’ performance. The defendants instead relied upon the June 1, 1989 closing date. It is thus evident that both parties allowed the transaction to fail and the agreement to terminate without breach or repudiation, as the trial court correctly found.
*157 As neither party was in breach of the agreement, the defendants were required to return the plaintiffs’ purchase deposit Pursuant to the parties’ agreement, such deposit could be retained by the sellers only as liquidated damages in the event of the plaintiffs’ breach. The defendants’ failure to tender performance or to demonstrate that they were ready, willing and able to perform precluded their claim of any breach or default by the plaintiffs.
3. The court’s proper finding and ruling that the plaintiffs were entitled to the return of their deposit was, however, inconsistent with the court’s assessment of only $10,000.00 in damages. The court’s finding that neither party was in breach required damages for the plaintiffs in the full amount of their deposit. See Flower v. Billerica, 320 Mass. 193 (1946). The trial court was not authorized to set off any losses claimed by the defendants in their sale of the property to a third party given the failure of the defendants to file a counterclaim.
4. The trial court’s failure to assess the amount of interest claimed by the plaintiffs herein was also inconsistent with the court’s subsidiary findings and rulings. Pursu-antto G.L.c. 231, §6C, interest is calculated “from the date of breach or demand.” The court allowed plaintiffs’ request no. 12 that “[o]n June 26,1989, plaintiffs through counsel forwarded a letter to defendants demanding the return of their deposit money....” As the trial court’s finding established a June 26,1989 date of demand which preceded the commencement of this action, the plaintiffs are entitled to statutory interest from June 26,1989.
5. Finally, there was no error in the court’s refusal to award multiple damages herein underG.Lc. 93A, §9. Thecourt’s action was consistentwith its properfindings of fact that the defendants did not knowingly or intentionally engage in deceptive and unfair business practices, and that the plaintiffs were not entitled to punitive damages. “Every deal thatgoes sour does notgive rise to a G.L.c. 93A claim,” Pappas Indus. Parks Inc. v. Psarros, 24 Mass. App. Ct. 596, 610 (1987), and even a successful c. 93A claim does not entitle the plaintiff to punitive damages as a matter of law. See Limina v. Tenaglia, 1992 Mass. App. Div. 58.
Accordingly, the court’s finding for the plaintiffs in the amount of $10,000.00 is vacated, and judgment for the plaintiffs is to be entered in the total deposit amount of $18,500.00, plus interest calculated from the June 26, 1989 date of demand. So ordered.

 The defendants’ answer did not include such claim either by way of affirmative defense or counterclaim.

The trial court’s findings of fact consist of the allowance or denial ofthe parties’ requests for findings and mlings. The following were dispositive:
Plaintiffs’ Request No. 1: “The defendants breached their contract with the plaintiffs by failing to complete the construction ofthe house and obtain an occupancy permitby June 1,1988.
’’DENIED.
Plaintiffs’ Renuest No. 2: “The defendants breached their contract with the plaintiffs by not delivering marketable title to the property on June 1,1989.
’’DENIED.
Plaintiffs’Renuest.No. 3: “The defendants breached theircontractwiththeDlaintiffsbvfailing and refusing to refund plaintiffs’ depositmonies as required by the express terms ofthe purchase and sale agreement.
’’DENIED.
Plaintiffs’ Renuest No. 4: “The defendants could not put the plaintiffs in default under the purchase and sale agreement unless they were ready, willing and able to perform and had manifested this by some offer of performance, [citations omitted]. Defendants were unable to perform as they failed to complete construction of the house and obtain an occupancy permit by June 1,1989.
’’DENIED.
Defendants’ Renuest No. 2: “The plaintiffs unequivocally repudiated the purchase and sale agreement entered into between them and the defendants, thereby relieving the defendants from meaningless performance of defendants’ obligations under the agreement.
’’DENIED.
Defendants’Reauest/FactNo. 20: “ThenlaintiffsCharlesand AnnmarieHenninger breached their obligations under the purchase and sale agreement entered into with the defendants.
’’DENIED.”